1

2

3

4

5

6

7                              UNITED STATES DISTRICT COURT

8                         FOR THE EASTERN DISTRICT OF CALIFORNIA

9

10   MILTON DEXTER HARRIS,                         No.  2:12-cv-3067-EFB P

11                   Plaintiff,

12            v.                                   ORDER AND FINDINGS AND
                                                  RECOMMENDATIONS
13   HAWKINS, et al.,

14                   Defendants.

15

16   I.      Introduction

17           Plaintiff is a state prisoner, proceeding without counsel and in forma pauperis, with an

18   action filed pursuant to 42 U.S.C. § 1983.  He initiated this action on December 20, 2012,

19   alleging that the named defendants were indifferent to his serious medical needs in violation of

20   the Eighth Amendment.  ECF No. 1. The case is proceeding on his second amended complaint,

21   filed July 9, 2013, against the sole remaining defendant in this action, Paul Osterlie, Jr.

22   ("defendant") for alleged violation of plaintiff's Eighth Amendment rights.  ECF No. 18.  He

23   alleges in that complaint that he sustained an injury on January 12, 2009, while working under

24   defendant's supervision at Mule Creek State Prison ("Mule Creek"), and that defendant required

25   him to continue working under painful conditions. *Id.*

26           Osterlie moves to dismiss the action for failure to exhaust administrative remedies.  ECF

27   No. 29.  For the following reasons, defendant's motion, construed as a motion for summary

28   judgment, must be granted.

                                                    1

1    II.    Background

2         On January 12, 2009, plaintiff injured his back while working as a butcher boner for the

3    C.A.L.P.I.A. meat factory at Mule Creek.  Second Amended Complaint ("SAC"), ECF No. 18, at

4    2.  Plaintiff says he did not immediately report the injury to his supervisor, Osterlie, because

5    plaintiff did not feel pain at that time or realize the magnitude of his injury.  *Id.*  On February 23,

6    2009, five weeks after first suffering the injury, plaintiff reported the injury to his supervisors,

7    defendant and Ms. Kim Yarbrough.[1]  *Id.*  Defendant sent plaintiff to the medical clinic where he

8    was examined by a doctor.  *Id.*

9         Plaintiff returned to work in a "chronically painful condition."  *Id.*  Upon his return to the

10   meat factory, plaintiff explained to Osterlie that the doctor who examined him "did nothing but

11   look at Plaintiff's low back area and did not administer anything by way of any type of diagnosis

12   or examination."  *Id.* at 3.  Plaintiff's remaining allegations with regard to Osterlie are as follows:

13
              Defendant Paul Osterlie Jr. then instructed the Plaintiff be moved to
14            a less strenuous position to continue working despite observing the
              chronically painful condition this Plaintiff was suffering from and
15            the need for further medical attention . . . .

16            During the period of 2/23/2009 through 3/3/2009, Plaintiff was
              made to work and suffer under a chronically painful condition that
17            no human being should ever have to endure due to the reckless
              conduct of industrial supervisor Paul Osterlie Jr. . . . for
18            intentionally or recklessly not summoning the appropriate medical
              treatment [he] should have summoned in [his] professional capacity
19            upon observing Plaintiff's chronically painful condition . . . .

20   *Id.*  Plaintiff also alleged that on March 3, 2009 he sought "the help of a qualified medical

21   evaluator . . . offered through the workman's compensation program to assess the true nature of

22   Plaintiff's lower back injury Plaintiff was made to chronically suffer due to the deliberate

23   indifference and wonton misconduct of [defendant] . . . ."  *Id.* at 4.

24   /////

25   /////

26   _____

27   [1] Although Ms. Yarbrough was initially named by plaintiff as a defendant, upon screening
     of his second amended complaint, the court did not authorize service of the complaint on Ms.
     Yarbrough.  ECF No. 21; *see* 28 U.S.C. § 1915A (requiring the court to review a complaint in a
28   civil action in which a prisoner seeks redress from a governmental entity, officer, or employee).

                                                    2

1    In his motion to dismiss, defendant argues that plaintiff's second amended complaint

2    should be dismissed because he failed to exhaust administrative remedies with regard to

3    allegations involving defendant.  ECF No. 29.

4    In support of his motion, defendant provided the declaration of A. Altschuler, the Health

5    Care Appeals Coordinator at Mule Creek.  ECF No. 29-3.  Altschuler maintains records of the

6    medical appeals at Mule Creek in a database called the Health Care Appeals and Risk Tracking

7    System.  *Id.* ¶ 2.  Altschuler described the process for receipt of inmate appeals involving health

8    care issues, and provided a copy of plaintiff's appeal history which shows that plaintiff filed three

9    separate health care appeals.  *Id.* ¶¶ 3-6.  Of the three appeals, only one appeal was processed

10   through all three levels of review; the remaining two appeals were rejected for failure to comply

11   with appeal regulations.  *Id.* ¶ 6.  The one health care appeal that was denied at the third level of

12   review addressed a grievance initiated by plaintiff on April 6, 2012 involving a complaint

13   regarding medical treatment plaintiff received for his January 12, 2009 injury (the "April 2012

14   grievance").  *Id.* ¶ 6, Ex. B.

15   Defendant also provided the declaration of L. Zamora, Chief of the Inmate

16   Correspondence and Appeals Branch.  ECF No. 29-6.  Chief Zamora's office is responsible for

17   reviewing inmate medical appeals, including medical staff complaints, at the third level of

18   review.  *Id.* ¶¶ 2-3.  Chief Zamora provided plaintiff's appeal history which shows that plaintiff

19   filed only one medical appeal at the third level.  *Id.* ¶ 6, Ex. A.  The third level appeal, which

20   addresses the April 2012 grievance, was denied on October 25, 2012.[2]  *Id.*

21   /////

22   _____

23   [2] Defendant also provided the declarations of M. Elorza, Correctional Counselor II/Appeals Coordinator at Mule Creek, and J. Zamora, Acting Chief of the Office of Appeals for

24   the California Department of Corrections and Rehabilitation ("CDCR").  ECF Nos. 29-4, -5. Elorza's office receives inmate appeals not related to health care issues.  ECF No. 29-4 ¶ 2.

25   Elorza described the grievance procedure for inmates, and indicated that plaintiff has not filed any inmate appeals at the first or second level.  *Id.* ¶¶ 3-8.  Acting Chief Zamora described the

26   grievance procedure for inmates submitting an appeal for third level review, and submitted a copy of plaintiff's appeal history indicating one appeal involving plaintiff that was decided at the third

27   level of review.  ECF No. 29-5 ¶¶ 4-9.  The grievance addressed a group appeal submitted by plaintiff and other inmates on or about December 21, 2007, and involved a complaint about

28   inmate living conditions.  *Id.* Ex. A.  The third level appeal record was closed on June 2, 2008, approximately six months before plaintiff's alleged injury.  *Id.*

1      A copy of the entire April 2012 grievance (which includes the reasons for plaintiff's

2  dissatisfaction with the response at the second level) and the third level decision were provided by

3  plaintiff with his second amended complaint as well as his opposition.  *See* Pl.'s Opp'n, ECF No.

4  30, at 58-62; SAC at 53-57.

5      In his April 2012 grievance, plaintiff described the subject/purpose of his appeal as

6  follows:  "preexisting work related injury performing job assignment."  Altschuler Decl. Ex. B.

7  The court provides at length plaintiff's explanation of his grievance:

8              On 1/12/2009 while performing my job assignment as a
             boner/butcher on Facility C yard in the P.I.A. Meat Factory I
9           injured or tore a ligament in the lower section of my right hip while
             lefting [sic] several 90 lb rounds (cow-legs) from a cardboard
10          container.  I did not report this said injury to my supervisor . . .
             because I didn't feel any pain at that specific instance – (nor) – did I
11          realize that I would suffer this injury this present 4/1/2012 day.
             After a continuance [sic] attempt from 2/23/2009 thur [sic] 7/09 at
12          getting the proper medical treatment to no avail . . . I was
             transferred to B yard on 6/16/2010 where after realizing that the
13          injury wasn't just a minor sprained hip I once again tried getting
             treatment.  On 5/18/2011 I submitted a 7362 health request to B
14          yard clinic.  On 5/27/2011 I was issued a medical lay-in . . . .  On
             7/15/2011 Dr. Hawkins schedule [sic] me for several x-ray of my
15          hip, spine, pelvic area etc.  All x-rays came inconclusive of injury
             in question . . . .  On 1/27/2012 again Dr. Hawkins schedule [sic]
16          me for several sessions with the physical therapist here at Mule
             Creek . . . .  On 3/27/2012 Dr. Hawkins said that he would bring me
17          back in 45 days leaving me to endure further pain [and] more
             suffering until next visit.

18

19  *Id.*  Plaintiff requested the following action in his grievance:

20              Due to the continual [and] very server [sic] pain I'm currently
             experiencing this very day [and] from the mediocre – manner in
21          which facility B yard's clinic has responded to my 7362 health care
             request of 5/18/2011 thur [sic] 3/27/2012 I need to have an M.R.I.
22          done to assess the seriousness of the injury I sustained, perhaps
             surgery, or I'll 602 to the next level.

23

24  *Id.*  In denying plaintiff's grievance at the first level on May 16, 2012, the Health Care Appeals

25  Office construed plaintiff's grievance as an "allegation of deliberate indifference by Dr.

26  Hawkins" and determined that it did not meet the criteria for the appeal to be processed as a staff

27  /////

28  /////

1   complaint because "[t]he evidence supports Dr. Hawkins appears to have acted professionally,

2   was not indifferent to [plaintiff's] pain and was not denying [plaintiff] proper medical treatment."

3   *Id.*

4         Plaintiff filed his appeal with the second level on June 4, 2012.  *Id.*  Therein, plaintiff

5   explained his dissatisfaction with the first level response as follows:

6           On 4/18/2012 I was interviewed by Dr. Hawkins involving a
            medical 602 I filed on behalf of Facility B yard medical clinic and

7           the very unexceptional manner they'[ve] responded to my medical
            request form of 5/18/2011 thur [sic] 3/27/2012 . . . .  First of all I

8           am dissatisfied with the first level decision because of the pain
            stricken lower right hip I still endure [and] suffer as I respond to my

9           second level of requested relief.

10  *Id.*  Plaintiff took issue with Dr. Hawkins' denial of his request for an MRI, arguing generally that

11  the "medical services provided to the inmate population" are "below the standard governed by the

12  Eighth Amendment."  *Id.*  Plaintiff's appeal to the second level was denied on June 25, 2012 for

13  the same reason it was denied at the first level.  *Id.*  Specifically, the decision found that the

14  evidence provided in support of plaintiff's allegations of deliberate indifference by Dr. Hawkins

15  did not suggest staff misconduct.  *Id.*  The decision also found that "[t]here is no evidence to

16  suggest below standard medical care resulting in cruel and unusual punishment and [plaintiff] did

17  not present any evidence to verify [his] claim.  [Plaintiff  has] full access to health care; [plaintiff]

18  just do[es] not have the authority to pick and choose what medications and accommodations [his]

19  physicians feel is [sic] medically necessary."  *Id.*

20        Plaintiff filed an appeal with the third level on July 10, 2012.  *Id.* Ex. A.  Therein, plaintiff

21  reiterated his dissatisfaction as stated in his prior grievances, adding that "[b]ased on seriousness

22  of injury in question [and] supporting documents attach [sic] . . . I truly fill [sic] medical

23  treatment is warranted per every rule" cited in the second level decision.  SAC at 56.  Plaintiff's

24  appeal was denied at the third level on October 25, 2012.  SAC at 57.  The decision denying

25  plaintiff's grievance summarized plaintiff's appeal file and documents obtained from his Unit

26  Health Record and found, in part, as follows:

27          Your contention that you have not received adequate medical care
            is refuted by professional health care staff familiar with your

28          medical history, as well as a review of your medical records.

> After review, there is no compelling evidence that warrants intervention at the [Director's Level Review] as your medical condition has been evaluated and you are receiving treatment deemed medically necessary.

*Id.* at 58.

After a careful review of the record, the court finds that defendant's motion to dismiss should be granted.

III.     Exhaustion under the PLRA

The issue presented here is whether the administrative grievance submitted by plaintiff sufficiently raised the claim that he now presents against Osterlie in the current amended complaint.  Defendant argues that plaintiff submitted a grievance raising a claim that the medical treatment he received was not adequate but did not raise the claim that Osterlie violated the Eighth Amendment by requiring plaintiff to work under painful conditions or failed to summon needed medical help.

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions [under section 1983 of this title] until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  "Prison conditions" subject to the exhaustion requirement have been defined broadly as "the effects of actions by government officials on the lives of persons confined in prison . . . ."  18 U.S.C. § 3626(g)(2); *Smith v. Zachary*, 255 F.3d 446, 449 (7th Cir. 2001); *see also Lawrence v. Goord*, 304 F.3d 198, 200 (2d Cir. 2002).  To satisfy the exhaustion requirement, a grievance must alert prison officials to the claims the plaintiff has included in the complaint, but need only provide the level of detail required by the grievance system itself.  *Jones v. Bock*, 549 U.S. 199, 218-19 (2007); *Porter v. Nussle*, 534 U.S. 516, 524-25 (2002) (purpose of exhaustion requirement is to give officials "time and opportunity to address complaints internally before allowing the initiation of a federal case").

Prisoners who file grievances must use a form provided by the California Department of Corrections and Rehabilitation, which instructs the inmate to describe the problem and outline the action requested.  The grievance process, as defined by California regulations, has three levels of review to address an inmate's claims, subject to certain exceptions.  *See* Cal. Code Regs. tit. 15,

1    § 3084.7.  Administrative procedures generally are exhausted once a plaintiff has received a

2    "Director's Level Decision," or third level review, with respect to his issues or claims.  *Id.*

3    § 3084.1(b).

4           Proper exhaustion of available remedies is mandatory, *Booth v. Churner*, 532 U.S. 731,

5    741 (2001), and "[p]roper exhaustion demands compliance with an agency's deadlines and other

6    critical procedural rules[.]"  *Woodford v. Ngo*, 548 U.S. 81, 90 (2006).  For a remedy to be

7    "available," there must be the "possibility of some relief . . . ."  *Booth*, 532 U.S. at 738.  Relying

8    on *Booth*, the Ninth Circuit has held:

9             [A] prisoner need not press on to exhaust further levels of review once he has
             received all "available" remedies at an intermediate level of review or has been
10           reliably informed by an administrator that no remedies are available.

11   *Brown v. Valoff*, 422 F.3d 926, 935 (9th Cir. 2005).

12          Failure to exhaust is "an affirmative defense the defendant must plead and prove."  *Jones*

13   *v. Bock*, 549 U.S. 199, 204, 216 (2007).  To bear this burden:

14           a defendant must demonstrate that pertinent relief remained available, whether at
             unexhausted levels of the grievance process or through awaiting the results of the
15           relief already granted as a result of that process. Relevant evidence in so
             demonstrating would include statutes, regulations, and other official directives that
16           explain the scope of the administrative review process; documentary or testimonial
             evidence from prison officials who administer the review process; and information
17           provided to the prisoner concerning the operation of the grievance procedure in
             this case . . . . With regard to the latter category of evidence, information provided
18           [to] the prisoner is pertinent because it informs our determination of whether relief
             was, as a practical matter, "available."
19

20   *Brown*, 422 F.3d at 936-37 (citations omitted).

21          A motion asserting an affirmative defense such as failure to exhaust may be brought under

22   Rule 12(b)(6) or Rule 56 depending on whether the factual predicate for the motion is based on

23   the text of the pleading or instead depends upon evidence submitted with the motion.  *See Albino*

24   *v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014) (en banc); *Jones*, 549 U.S. at 215 ("A complaint is

25   subject to dismissal for failure to state a claim if the allegations, taken as true, show the plaintiff

26   is not entitled to relief.").  Here, defendant has included with his motion to dismiss certain

27   affidavits and exhibits to establish the factual predicate for the motion.  Resolution of the motion

28   necessarily requires the court to consider those affidavits and exhibits for the purpose of

1    determining whether plaintiff has, in fact, failed to exhaust his administrative remedies.  Such a

2    motion must be treated as a motion for summary judgment.  Fed. R Civ. P. 12(d).  The court

3    therefore construes defendant's motion as a motion for summary judgment.  If under the Rule 56

4    summary judgment standard, the court concludes that plaintiff has failed to exhaust administrative

5    remedies, the proper remedy is dismissal without prejudice.  *Wyatt v. Terhune*, 315 F.3d 1108,

6    1120, *overruled on other grounds by Albino*, 747 F.3d 1162.

7    IV.    Summary Judgment Standard

8          Summary judgment is appropriate when there is "no genuine dispute as to any material

9    fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Summary

10   judgment avoids unnecessary trials in cases in which the parties do not dispute the facts relevant

11   to the determination of the issues in the case, or in which there is insufficient evidence for a jury

12   to determine those facts in favor of the nonmovant.  *Crawford-El v. Britton*, 523 U.S. 574, 600

13   (1998); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-50 (1986); *Nw. Motorcycle Ass'n v.

14   U.S. Dep't of Agric.*, 18 F.3d 1468, 1471-72 (9th Cir. 1994).  At bottom, a summary judgment

15   motion asks whether the evidence presents a sufficient disagreement to require submission to a

16   jury.

17         The principal purpose of Rule 56 is to isolate and dispose of factually unsupported claims

18   or defenses.  *Celotex Cop. v. Catrett*, 477 U.S. 317, 323-24 (1986).  Thus, the rule functions to

19   "'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for

20   trial.'"  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)

21   (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).  Procedurally,

22   under summary judgment practice, the moving party bears the initial responsibility of presenting

23   the basis for its motion and identifying those portions of the record, together with affidavits, if

24   any, that it believes demonstrate the absence of a genuine issue of material fact.  *Celotex*, 477

25   U.S. at 323; *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc).  If the moving

26   party meets its burden with a properly supported motion, the burden then shifts to the opposing

27   party to present specific facts that show there is a genuine issue for trial.  *Anderson*, 477 U.S. at

28   248; *Auvil v. CBS "60 Minutes"*, 67 F.3d 816, 819 (9th Cir. 1995).

8

A clear focus on where the burden of proof lies as to the factual issue in question is crucial to summary judgment procedures. Depending on which party bears that burden, the party seeking summary judgment does not necessarily need to submit any evidence of its own. When the opposing party would have the burden of proof on a dispositive issue at trial, the moving party need not produce evidence which negates the opponent's claim. *See e.g., Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 885 (1990). Rather, the moving party need only point to matters which demonstrate the absence of a genuine material factual issue. *See Celotex*, 477 U.S. at 323-24 ("[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'"). Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *See id.* at 322. In such a circumstance, summary judgment must be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment . . . is satisfied." *Id.* at 323.

To defeat summary judgment the opposing party must establish a genuine dispute as to a material issue of fact. This entails two requirements. First, the dispute must be over a fact(s) that is material, i.e., one that makes a difference in the outcome of the case. *Anderson*, 477 U.S. at 248 ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."). Whether a factual dispute is material is determined by the substantive law applicable for the claim in question. *Id.* If the opposing party is unable to produce evidence sufficient to establish a required element of its claim that party fails in opposing summary judgment. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322.

Second, the dispute must be genuine. In determining whether a factual dispute is genuine the court must again focus on which party bears the burden of proof on the factual issue in question. Where the party opposing summary judgment would bear the burden of proof at trial on

9

1  the factual issue in dispute, that party must produce evidence sufficient to support its factual

2  claim.  Conclusory allegations, unsupported by evidence are insufficient to defeat the motion.

3  *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).  Rather, the opposing party must, by affidavit

4  or as otherwise provided by Rule 56, designate specific facts that show there is a genuine issue

5  for trial.  *Anderson*, 477 U.S. at 249; *Devereaux*, 263 F.3d at 1076.  More significantly, to

6  demonstrate a genuine factual dispute the evidence relied on by the opposing party must be such

7  that a fair-minded jury "could return a verdict for [him] on the evidence presented."  *Anderson*,

8  477 U.S. at 248, 252.  Absent any such evidence there simply is no reason for trial.

9       The court does not determine witness credibility.  It believes the opposing party's

10  evidence, and draws inferences most favorably for the opposing party.  *See id.* at 249, 255;

11  *Matsushita*, 475 U.S. at 587.  Inferences, however, are not drawn out of "thin air," and the

12  proponent must adduce evidence of a factual predicate from which to draw inferences.  *American*

13  *Int'l Group, Inc. v. American Int'l Bank*, 926 F.2d 829, 836 (9th Cir. 1991) (Kozinski, J.,

14  dissenting) (citing *Celotex*, 477 U.S. at 322).  If reasonable minds could differ on material facts at

15  issue, summary judgment is inappropriate.  *See Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th

16  Cir. 1995).  On the other hand, "[w]here the record taken as a whole could not lead a rational trier

17  of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  *Matsushita*, 475

18  U.S. at 587 (citation omitted); *Celotex*, 477 U.S. at 323 (if the evidence presented and any

19  reasonable inferences that might be drawn from it could not support a judgment in favor of the

20  opposing party, there is no genuine issue).  Thus, Rule 56 serves to screen cases lacking any

21  genuine dispute over an issue that is determinative of the outcome of the case.

22       Both Rule 12(d) and Ninth Circuit case law pertaining to in-custody pro se plaintiffs

23  require that adequate and timely notice be provided to the plaintiff which reasonably apprises him

24  of his burden to oppose defendant's motion.  *See Woods v. Carey*, 684 F.3d 934, 938 (9th Cir.

25  2012) (requiring such notice for summary judgment motions, citing *Rand v. Rowland,* 154 F.3d

26  952, 961 (1998)); *Stratton v. Buck*, 697 F.3d 1004, 1006 (9th Cir. 2012) (requiring such notice for

27  motions to dismiss for failure to exhaust administrative remedies where evidence extrinsic to the

28  complaint is submitted); *see also Albino*, 747 F.3d at 1166 (providing that a motion for summary

1   judgment, and not a motion to dismiss, is the proper means of asserting the defense of failure to

2   exhaust, where evidence extrinsic to the complaint is submitted).  Defendant's motion included

3   notice to plaintiff informing him of the requirements for opposing a motion predicated on his

4   alleged failure to exhaust available administrative remedies, including the warning that if plaintiff

5   failed to submit evidence in opposition (such as declarations or other documents), his case (or any

6   unexhausted claims) could be dismissed and there would be no trial.[3]

7       V.    Analysis

8           As noted, defendant argues that, while plaintiff exhausted an administrative appeal

9   involving his January 2009 injury, the grievance did not allege that Osterlie was indifferent to

10  plaintiff's serious medical needs by making him continue to work after he suffered his injury and

11  by failing to summon proper medical treatment.  ECF No. 29.  Plaintiff does not dispute the

12  exhaustion requirements outlined by defendant, or the "record allegations" as stated in

13  defendant's motion.  Pl.'s Opp'n at 2:4-6, 3:21-25.  Instead, plaintiff argues that a general

14  "chrono" filled out by defendant on March 5, 2009 establishes that Osterlie was indifferent to

15  plaintiffs serious medical needs by failing to summon "proper medical treatment."  *Id.* at 2-3, 17.

16  Plaintiff requests denial of defendant's motion on this basis.  The problem with plaintiff's

17  argument is its failure to recognized that the claim raised in his grievance and administrative

18  appeal is separate and distinct form the claim that he asserts here, in his second amended

19  complaint, against Osterlie.  The claim now raised here should have been, but was not raised in

20  the grievance and administrative appeal.

21  /////

---

22          [3] The notice served with defendant's motion (ECF No. 29-2) provided plaintiff adequate
    information apprising him of the requirements for a response to a motion for summary judgment
23  for failure to exhaust administrative remedies, including the crucial information that he could
    submit evidence including declarations bearing on his assertions of exhaustion and that the failure
24  to do so could result in his case ending.  Because that notice reasonably apprised plaintiff of his
    burden and his right to submit a declaration or other evidence, it satisfies the requirements of
25  *Rand*, 154 F.3d at 961.  *See Stratton v. Buck*, 697 F.3d 1004, 1006 (9th Cir. 2012) (requiring that
    the notice accompanying a failure to exhaust motion explain "the requirements for a response . . .
26  and the consequence if the district court granted the motion"); *Woods v. Carey*, 684 F.3d 934, 938
    (9th Cir. 2012) (citing *Rand*, 154 F.3d at 960-61, and requiring that the notice accompanying a
27  summary judgment motion notify plaintiff of "his right to file counter-affidavits or other
    evidentiary material, that his failure to do so may result in summary judgment against him, and
28  that his loss on summary judgment would terminate the litigation").

1    Exhaustion of all "available" administrative remedies is mandatory. *Porter*, 534 U.S. at

2    532.  The Supreme Court held in *Jones v. Bock*, 549 U.S. 199, 219 (2007), that that a prison's

3    own grievance process, not the PLRA, determines how detailed a grievance must be to satisfy the

4    PLRA exhaustion requirement. *Griffin v. Arpaio*, 557 F.3d 1117, 1120 (9th Cir. 2009).  In *Jones*,

5    the Court held that a prisoner did not fail to properly exhaust an administrative remedy because of

6    the lack of specifics in the initial grievance form. *Jones*, 549 U.S. at 219.  In so doing, the Court

7    focused on the lack of guidelines requiring more formality in the federal legislation that mandates

8    exhaustion, as well as the prison's own lack of guidance as to what specifics need to be included

9    in the initial grievance. *Id.* at 218.

10    Here, however, at the time plaintiff submitted his grievance, the regulations governing the

11    CDCR's grievance process gave specific guidance as to the specificity required in appeals.

12    Effective January 28, 2011, the regulations were significantly revised and now require an inmate

13    to identify by name and title or position each staff member alleged to be involved in the action or

14    decision being appealed, along with the dates each staff member was involved in the issue being

15    appealed.  Cal. Code Regs. tit. 15, § 3084.2(a)(3).  If the inmate does not have this information,

16    he must provide any other available information that would assist the appeals coordinator in

17    identifying the staff member.  *Id.*  These revised regulations were in effect when plaintiff

18    submitted his grievance to the first level of review on April 6, 2012, and therefore govern the

19    court's analysis of plaintiff's efforts to exhaust his administrative remedies.  Altschuler Decl. Ex.

20    B.

21    Osterlie was not named in plaintiff's administrative appeal, but rather mentioned generally

22    in plaintiff's description of how he sustained his injury and the fact that he did not immediately

23    report it to his supervisor.  *Id.*  The brief reference to his "supervisor" and his attempt on or

24    around February 23, 2009 to obtain "proper medical treatment" does not meet the specificity

25    required by the revised regulations.   Here, plaintiff's second amended complaint alleges that

26    defendant was indifferent to his serious medical needs by making plaintiff "work and suffer under

27    a chronically painful condition" and failing to summon appropriate medical treatment.  SAC at 3.

28    /////

12

1   Plaintiff's appeal, on the other hand, involves his dissatisfaction with the medical treatment he

2   received from Dr. Hawkins and the Facility B yard medical clinic at Mule Creek ("the clinic").  In

3   fact, the crux of plaintiff's grievance takes issue with treatment he received between May 27,

4   2011 and March 27, 2012, more than two years after plaintiff's alleged interactions with

5   defendant Osterlie.  Finally, nothing in plaintiff's grievance filed at any level indicates plaintiff's

6   dissatisfaction with prison staff prior to his receiving medical treatment.

7           The court finds that the April 2012 grievance failed to apprise prison officials of any

8   allegations against defendant Osterlie, or any prison staff members for that matter, regarding

9   medical indifference for failure to summons appropriate medical treatment or requiring him to

10  work.  The officials responding to plaintiff's grievance reasonably concluded that he was alleging

11  deliberate indifference on the part of Dr. Hawkins and the clinic for not conducting an MRI.

12  Thus, prison officials were only made aware of plaintiff's allegations involving medical treatment

13  he received from the clinic.  Without more, the appeals office officials would have been unable to

14  diligently address plaintiff's concerns regarding defendant's alleged failure to summon

15  appropriate medical treatment. *Griffin*, 557 F.3d at 1121 (in order to properly exhaust, an inmate

16  must "'provide enough information . . . to allow prison officials to take appropriate responsive

17  measures'") (citing *Johnson v. Testman*, 380 F.3d 691, 697 (2d Cir. 2004) (alterations original)).

18          Despite having been granted an opportunity to do so, plaintiff has failed to explain why he

19  did not file a grievance addressing defendant's alleged indifference to his serious medical needs.

20  Instead, plaintiff argues that his "chrono" establishes that defendant was indifferent to his serious

21  medical needs and the court should deny defendant's motion on this ground.  However, whether

22  or not defendant was indifferent is not the issue on this motion.  Before a prisoner can bring a suit

23  in federal court challenging prison conditions, he must properly exhaust all available

24  administrative remedies. *Porter*, 534 U.S. at 532 (exhaustion is a prerequisite for all prisoner

25  suits regarding conditions of confinement); *Woodford*, 548 U.S. at 93 (("The PLRA attempts to

26  eliminate unwarranted federal-court interference with the administration of prisons,[] and thus

27  seeks to 'affor[d] corrections officials time and opportunity to address complaints internally

28  before allowing the initiation of a federal case.'") (quoting *Porter v. Nussle*, 534 U.S. 516, 525

1   (2002) (second alteration original)).  In this case, it is undisputed that plaintiff has failed to do so.

2           Because there is no genuine dispute that plaintiff failed to comply with the proper

3   exhaustion procedure, or that there is no established basis on which his failure to exhaust should

4   be excused, defendant's motion must be granted.  *See McKinney v. Carey*, 311 F.3d 1198, 1200

5   (9th Cir. 2002) ("Congress could have written a statute making exhaustion a precondition to

6   judgment, but it did not.  The actual statue makes exhaustion a precondition to suit."); *Vaden v.*

7   *Summerhill*, 449 F.3d 1047, 1051 (9th Cir. 2006) (prisoner brings an action for purposes of 42

8   U.S.C. § 1997e when he submits his complaint to the court).

9   VI.    Conclusion

10          Although plaintiff filed a written consent to jurisdiction of a magistrate judge on January

11  3, 2013, ECF No. 4, defendant did not respond to the court's Order Re Consent or Request For

12  Reassignment entered on October 23, 2013, ECF No. 25.  Accordingly, the Clerk is directed to

13  randomly assign a district judge to this case.

14          Further, IT IS HEREBY RECOMMENDED that defendant's December 27, 2013 motion

15  to dismiss for failure to exhaust administrative remedies (ECF No. 29), construed as a motion for

16  summary judgment, be granted, and that this case be dismissed, without prejudice.

17          These findings and recommendations are submitted to the United States District Judge

18  assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

19  after being served with these findings and recommendations, any party may file written

20  objections with the court and serve a copy on all parties.  Such a document should be captioned

21  "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the

22  objections shall be filed and served within fourteen days after service of the objections.  The

23  parties are cautioned that failure to file objections within the specified time may waive the right to

24  appeal the District Court's order.  *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez*

25  *v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

26  Dated:  July 3, 2014.

27                                          EDMUND F. BRENNAN
                                            UNITED STATES MAGISTRATE JUDGE

28